# 99 DTA 197

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ**

CASTOR SILVA Y ADA OLIVERAS
Demandantes-Apelados

v.

WALLACE INTERNATIONAL DE PUERTO RICO, INC., y
JOHN DOE INSURANCE, CO. Y JUAN DEL PUEBLO
Demandados-Apelantes

Núm. KLAN-98-00412

San Juan, Puerto Rico, a 8 de junio de 1999

Panel integrado por su Presidente, el Juez Rossy García
y los Jueces Martínez Torres y Rodríguez García

Rodríguez García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Acude ante nos Wallace International de Puerto Rico, Inc. solicitando la revocación o modificación de una sentencia dictada en rebeldía por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, en la que se condena a Wallace a pagar $101,000.00 en indemnización por lesiones recibidas en las manos por su empleado, Castor Silva Vega, en el ejercicio de sus labores con la compañía, patrono no asegurado bajo el Fondo del Seguro del Estado. Además, el Tribunal recurrido concedió la suma de $15,000.00 a Ada P. Oliveras, quien para la fecha del accidente era la novia, hoy la esposa, de Silva Vega. Se modifica la sentencia en cuanto a las sumas concedidas como indemnización y así modificada se confirma.

El apelado Castor Silva Vega, en adelante *"Silva"*, era empleado del apelante Wallace International de P.R., Inc., en adelante *"Wallace"*, en una fábrica de instrumentos y herramientas de metal en el Municipio de San Germán. En 22 de agosto de 1991, como a las 12:30 p.m., mientras trabajaba en la fábrica, Silva perdió la tercera falange del dedo índice, y la tercera falange del dedo medio de su mano izquierda, al activarse inesperadamente una plancha. En 10 de septiembre de 1993, el Fondo del Seguro del Estado, mediante Resolución, resolvió que Wallace no era patrono asegurado en el momento de ocurrir el accidente que le causó la lesión a Silva. Por ello, en 8 de diciembre de 1993, Silva y su entonces esposa, Ada Palmira Oliveras, en adelante *"Ada"*, presentaron una demanda en daños y perjuicios en contra de Wallace, en el Tribunal de Primera Instancia, Sala Superior de Ponce. Luego, ante la solicitud de Wallace, el caso fue trasladado al Tribunal de Primera Instancia, Sala Superior de Mayagüez.

En 14 de junio de 1994, Wallace contestó la demanda, y en 28 de junio del mismo año Wallace envió a Silva y Ada dos interrogatorios. En 27 de junio de 1994 Silva y Ada enviaron un interrogatorio a Wallace, el cual Wallace contestó el día 3 de agosto de 1994.

En 23 de septiembre de 1994, Silva y Ada enviaron un requerimiento de admisiones, un requerimiento de producción de documentos, y una moción objetando dos contestaciones al interrogatorio del 27 de junio de 1994, a Wallace. Además, en ese mismo día, le notifican a Wallace la toma de una deposición para el día 29 de noviembre en el pueblo de San Germán. En adición, Silva y Ada le notificaron al Tribunal de Instancia que habían contestado el interrogatorio que Wallace les había sometido.

En 5 de octubre de 1994, el abogado de Wallace presentó una moción de sentencia sumaria. En 14 de octubre de 1994, se celebró una conferencia sobre el estado de los procedimientos, ante el Tribunal, y en dicha reunión se acordó lo siguiente:

*"1) Se confirmó la celebración de varias deposiciones el día 29 de noviembre de 1994 y la presentación de nuevos interrogatorios después de las deposiciones.*

*2) El abogado de Wallace informó que los abogados de Silva y Ada podrían inspeccionar la fábrica el mismo día en que se tomasen las deposiciones.*

*3) Se concedió un término adicional de 20 días a Wallace para que contestase los interrogatorios y requerimientos de admisiones presentados por Silva y Ada.*

*4) Se señaló la conferencia con antelación al juicio para el día 7 de febrero de 1995."*

Luego, en 13 de octubre de 1994, Silva y Ada sometieron su oposición a la moción de sentencia sumaria que presentara Wallace, y un segundo interrogatorio a dicha firma. En 1 de noviembre de 1994, el abogado de Silva y Ada presentó una primera moción solicitando la imposición de sanciones, o la sentencia de rebeldía. En 8 de noviembre de 1994, el abogado de Wallace solicitó una prórroga de veinte (20) días para contestar los interrogatorios y requerimientos de admisiones que le sometieran Silva y Ada. En 30 de noviembre de 1994, los abogados de Silva y Ada informaron al Tribunal de Instancia la incomparecencia de los abogados de Wallace a la deposición señalada para el 29 de noviembre de 1994.

Solicitaron entonces Silva y Ada del tribunal, la imposición de los gastos y honorarios incurridos en la preparación de la deposición, y una segunda solicitud de imposición de sanciones, o la anotación de rebeldía a Wallace. Ese mismo día, el Tribunal de Instancia concedió un último término de quince (15) días a los abogados de Wallace para que contestasen los interrogatorios y requerimientos de admisiones solicitados por los esposos Silva. Esta orden del Tribunal de Instancia fue notificada el día 22 de diciembre de 1994.

En 5 de enero de 1995, el Tribunal de Instancia emitió una segunda orden, en la cual le concedió un término de diez (10) días al abogado de Wallace para que informase tres posibles fechas en que pudiese tomarse una deposición, advirtiéndole al abogado de la firma, que de repetirse la situación, se aplicarían sanciones. En adición, se le recordó al abogado de Wallace que si no presentaba las contestaciones a los interrogatorios y al requerimiento de admisiones de Silva y Ada, dentro del término concedido en la pasada orden del tribunal, también se aplicarían sanciones. Esta orden del Tribunal de Instancia fue notificada el día 12 de enero de 1995.

En 11 de enero de 1995, el abogado de Silva y Ada presentaron una tercera moción solicitando la imposición de sanciones o la anotación de rebeldía a la parte contraria, debido a que Wallace no había contestado una parte del primer interrogatorio, ni el segundo interrogatorio. Tampoco había Wallace contestado el requerimiento de admisiones, ni la solicitud de producción de documentos.

En 30 de enero de 1995, el abogado de Wallace sometió las contestaciones al segundo interrogatorio, y al requerimiento de admisiones por parte de su cliente. Informó además al Tribunal, que había ya ofrecido al abogado de Silva y Ada las posibles fechas para la toma de la deposición, la producción de documentos, y la inspección de la fábrica de Wallace.

En 7 de febrero de 1995, se celebró la conferencia con antelación al juicio, a la cual el abogado de Wallace no compareció. En dicha conferencia, el Tribunal de Instancia le impuso una sanción económica de $500.00 al abogado de Wallace, por su cliente no haber contestado los interrogatorios ni el requerimiento de admisiones. La sanción debía ser consignada en el término de quince (15) días de la notificación de la orden. Además, el tribunal ordenó a Wallace y a su abogado, que mostrasen causa en el término de quince (15) días, por lo cual el tribunal no debía eliminar sus alegaciones y anotarle la rebeldía. Se ordenó que copia de la minuta de la conferencia fuera notificada a Wallace directamente y a su abogado, y la secretaría así lo hizo.

En 28 de febrero de 1995, el abogado de Silva y Ada presentó una cuarta moción solicitando la imposición de sanciones y la anotación de rebeldía a Wallace, debido a que Wallace, contrario a la representación hecha al Tribunal, no había contestado los interrogatorios ni había informado las tres posibles fechas para la celebración de las deposiciones. Se indicó al tribunal que tampoco Wallace, ni su abogado, habían cumplido con lo ordenado por el tribunal en la conferencia con antelación al juicio. Además, el abogado de Silva y Ada informó al tribunal que el gerente de Wallace estaba realizando llamadas telefónicas a Silva, para negociar una transacción a espaldas de su abogado.

En 13 de marzo de 1995, el Tribunal de Instancia ordenó la celebración de una segunda conferencia con

antelación al juicio para el día 1 de junio de 1995. En 19 de abril de 1995, el abogado de Wallace presentó una *"moción informativa"*, en la que indicaba al tribunal que había notificado a Silva y Ada las contestaciones al interrogatorio, con la prueba documental solicitada. Pidió disculpas al tribunal por la tardanza en contestar el interrogatorio, y por no asistir a la conferencia con antelación al juicio celebrada el día 7 de febrero de 1995.

Le indicó el abogado de Wallace al tribunal que la tardanza en contestar el interrogatorio se debió al hecho de que el representante de Wallace había contraído matrimonio para esa fecha. En cuanto a su ausencia a la conferencia con antelación al juicio, indicó que se debió a que el señalamiento de la misma no fue anotado en su calendario, y la confundió con la celebración de la vista de otro caso de Wallace. En 15 de mayo de 1995, el Tribunal de Instancia emitió una orden en la cual informó la aceptación de la excusa presentada por el abogado de Wallace. El tribunal también redujo la sanción económica al abogado de Wallace, de $500.00 a $200.00.

En 31 de mayo de 1995, los abogados de Silva y Ada presentaron una moción en oposición a las contestaciones al segundo interrogatorio. Se alega en dicha moción que Wallace no respondió a las preguntas y que tampoco presentó los documentos solicitados. Por último, se solicitó del tribunal que eliminase las alegaciones de Wallace, y por quinta vez solicitó la anotación de la rebeldía.

En 1 de junio de 1995 se celebró la segunda conferencia con antelación al juicio. En dicho acto, el Tribunal de Instancia ordenó al abogado de Wallace que se contestase de manera correcta el segundo interrogatorio de Silva, y entregase copia de los documentos solicitados en el mismo. Se le concedió un término de quince (15) días para hacerlo, y de incumplir, se le impondría una sanción de $5,000.00 correspondiendo de dicha suma, $2,000.00 para los Silva, y $3,000.00 para el Pueblo de Puerto Rico. También el tribunal le informó al abogado de Wallace que el incumplimiento con lo ordenado, significaría que se le podrían eliminar las alegaciones y anotársele la rebeldía. Copia de la minuta le fue notificada al abogado de Wallace y a esta firma directamente a su dirección en autos.

En 21 de junio de 1995, el abogado de Silva y Ada presentaron una moción informativa y solicitud de anotación de rebeldía, en la cual le informan al tribunal que la parte contraria no había cumplido con lo ordenado por dicho Foro, solicitando así, por sexta ocasión, la anotación de rebeldía a Wallace, y otras sanciones adicionales.

En 10 de julio de 1995, el Tribunal de Instancia impuso la sanción de $5,000.00 a Wallace la cual debía de ser consignada dentro de un término de diez (10) días. Se advirtió a Wallace que de incumplir con lo ordenado dentro del término señalado, el tribunal le eliminaría las alegaciones y le anotaría la rebeldía. La orden fue notificada el día 12 de julio de 1995 a los abogados de récord en el caso, pero no se le notificó a Wallace, como ordenó el Tribunal.

En 1 de agosto de 1995, los abogados de Silva y Ada presentaron una moción informativa para informar al tribunal que la parte contraria no había cumplido con la orden emitida el día 10 de julio de 1995, y solicitaron que se eliminasen las alegaciones de Wallace, y por séptima vez solicitaron la anotación de rebeldía.

En 31 de agosto de 1995, el Tribunal de Instancia emitió una resolución eliminando las alegaciones de Wallace y anotándole la rebeldía. Así dictaminó el tribunal, aunque desconocía si Wallace tenía conocimiento de las órdenes del tribunal emitidas en la conferencia con antelación al juicio del 1 de junio de 1995, y en la orden del 10 de julio de 1995.

Además le concedió el tribunal un término improrrogable de siete días a Wallace para obtener la reinstalación de las alegaciones y el relevo de la rebeldía si consignaba $7,000.00 en el tribunal. Esto

correspondía a los $5,000.00 de sanción, impuestos en la orden del 1ro. de julio de 1995, más $2,000.00 en calidad de honorarios de abogado para la parte contraria. Esta resolución, notificada el día 18 de septiembre de 1995, no se le dirigió a Wallace, pero sí a su abogado.

En 29 de septiembre de 1995, el abogado de Wallace notificó al tribunal que consignó un cheque emitido por Wallace a favor del Tribunal de Primera Instancia, por la suma de $7,000.00, en la Secretaría del tribunal, lo que confirma que la empresa tenía conocimiento de la sanción impuesta, y el estado crítico de su caso. Pero sucedió que ese mismo día, la Secretaría del Tribunal ordenó la devolución del cheque de $7,000.00 consignado por Wallace, debido a que el tribunal sólo acepta consignaciones de dinero en efectivo, cheques del gerente, o giros. Al recibir el cheque devuelto, en 10 de octubre de 1995, Wallace consignó nuevamente en la Secretaría los $7,000.00, esta vez mediante cheque oficial.

En 17 de octubre de 1995, se celebró otra conferencia con antelación al juicio, y en la misma el Tribunal ordenó que como no se consignó el dinero dentro del término dispuesto, se habría de mantener la sanción consistente de la eliminación de las alegaciones, y la anotación de la rebeldía, ordenando además la devolución de los $7,000.00 consignados por Wallace en la Secretaría. El abogado de Wallace solicitó una reconsideración, pero el tribunal denegó la misma.

En 2 de noviembre de 1995, el tribunal de instancia emitió una resolución y Orden, en la cual confirmó la eliminación de las alegaciones de la parte demandada, y la anotación de la rebeldía. Sobre este dictamen interlocutorio que fue notificado debidamente, Wallace no instó recurso de revisión judicial alguno.

En 28 de mayo de 1996, se celebró la vista en rebeldía y en 12 de febrero de 1996 el Tribunal de Primera Instancia emitió sentencia, condenando a Wallace a pagar $101,000.00 a Silva, y $15,000.00 a Ada en concepto de indemnización por daños y perjuicios a causa de su negligencia. También ordenó a Wallace a pagar $5,000.00 adicionales en honorarios de abogados, más las costas y gastos del proceso. Oportunamente Wallace presentó ante nos un recurso de apelación alegando que el Tribunal de Instancia cometió los siguientes errores:

*"A. Incidió manifiestamente el Honorable Tribunal de Instancia al eliminar las alegaciones de la parte demandada y anotar la rebeldía sin antes haberle notificado a la parte de tal sanción, impidiéndole así tener su día en corte para presentar defensas a su favor.*

*B. Incidió manifiestamente el Honorable Tribunal de Instancia al penalizar drásticamente a la parte demandada por los errores cometidos por su representación legal en el trámite procesal del caso sin antes imponerle sanciones a su abogado, en su carácter personal.*

*C. Incidió manifiestamente el Honorable Tribunal de Primera Instancia al aplicar tal drástica sanción a la parte demandada mientras permitió a la parte demandante objetar las contestaciones a los interrogatorios fuera de término, dando lugar a la controversia que provocó la eliminación de las alegaciones y la anotación de la rebeldía a la parte demandada.*

*D. Incidió manifiestamente el Honorable Tribunal de Instancia en su apreciación de la prueba presentada (particularmente la prueba documental), al estimar y valorizar los daños y admitir en evidencia, para probar daños físicos, documentos no autenticados del Fondo del Seguro del Estado y la Comisión industrial."*

La parte apelada ha presentado un escrito en oposición. En el mismo se alega que la moción de relevo de sentencia es el trámite adecuado para que Wallace solicite el relevo de la anotación de rebeldía y la reintegración de sus alegaciones y no el recurso de apelación. Estamos en posición de resolver y, al así hacerlo, como tenemos

dicho, modificamos la sentencia apelada y así modificada, se confirma.

## II. El derecho a aplicarse a los hechos del caso.

Antes de comentar los errores alegados por Wallace en su escrito de apelación, discutiremos la alegación de Silva de que un recurso de apelación no es un vehículo adecuado para que una parte pueda solicitar el relevo de una anotación de rebeldía. Veamos.

Una parte afectada puede solicitar que se le releve de la anotación de rebeldía por medio de una oportuna solicitud de reconsideración, dentro del término de quince (15) días que provee la Regla 47 de las de Procedimiento Civil 32, L.P.R.A. Ap. III, R. 47, o mediante una moción de relevo bajo la Regla 49.2 (32 L.P.R. A. Ap. III, R. 49.2), si lo hace dentro del término de seis (6) meses que dicha Regla establece. Y la Regla 45.3 de Procedimiento Civil (32 L.P.R.A. Ap. III, R. 45.3) autoriza a un tribunal a dejar sin efecto una anotación de rebeldía cuando existe justa causa para ello. De la negativa del tribunal a conceder el relevo de la rebeldía, la parte afectada puede acudir ante nos mediante un recurso de *certiorari*, lo que no hizo Wallace en este caso.

No obstante dichos remedios o recursos, cuando se trata de que el Tribunal de Primera Instancia haya dictado una sentencia en rebeldía, la parte afectada tiene perfecto derecho de acudir a nosotros mediante recurso de apelación ■ Véase a *Vázquez Prada v. King Vda. Dooley,* 58 D.P.R. 333, 333-334 (1941); *Pedraza v. González,* 45 D.P.R. 927, 928 (1933); *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2nd Cir. 1993). Es decir, aunque el apelante haya podido solicitar que se le releve de la anotación de rebeldía a través de otros medios legales, esto no limita el derecho del apelante a solicitar que un tribunal de mayor jerarquía revise la corrección de la anotación de rebeldía en su contra al finalizar el caso en el tribunal primera instancia. *Jameson v. Simonds Saw Co. et al.,* 77 p. 662, 663 (Cal. 1904). Además, es norma de derecho generalmente reconocida que el método normal y tradicional para corregir los errores cometidos por los tribunales de primera instancia es el recurso apelativo. *Otero Fernández v. Alguacil,* 116 D.P.R. 733, 740 (1985). En el presente caso, el Tribunal de Primera Instancia anotó en rebeldía a Wallace y ya ha emitido una sentencia final en el mismo. En conclusión, Wallace tiene el derecho de acudir ante nos, por medio de un recurso de apelación, para que revisemos la corrección de la anotación de rebeldía ordenada por el Tribunal de Primera Instancia en su contra.

Una vez resuelto lo anterior, comenzaremos a discutir los errores alegados por el abogado de Wallace en su escrito de apelación.

i. Como primer error, el abogado de Wallace alega que el Tribunal de Primera Instancia abusó de su discreción por haberle anotado la rebeldía sin antes haberle notificado a su cliente tal sanción.

Señalamos los cimientos en derecho que nos guían al determinar si este error se cometió.

Toda sentencia o determinación judicial, al igual que una resolución administrativa, goza de una presunción de corrección y legalidad. *Escalera v. Armenteros,* 72 D.P.R. 11, 18 (1952); *Verdejo v. Lecumberri,* 57 D.P.R. 519, 521 (1940); *Fernández v. Pastoriza,* 43 D.P.R. 896, 896 (1932); *Ruiz v. Juez Municipal,* 33 D.P.R. 175, 177 (1924); *Abarca & Co. v. Central Vannina y García,* 23 D.P.R. 566, 572 (1916). Esto significa que la parte apelante tiene el peso de demostrar que el tribunal apelado actuó de manera errónea o ilegal. De lo contrario, procede que el tribunal apelativo confirme las sentencias o determinaciones de los Tribunales de Primera Instancia, excepto que el error alegado sea uno de derecho y que el mismo se pueda apreciar con el simple examen del expediente apelativo. *Gutiérrez v. Bustelo,* 15 D.P.R. 243, 245-246 (1906).

Es norma reiterada por nuestro Tribunal Supremo que un tribunal apelativo no debe intervenir en la

apreciación de la prueba hecha por el tribunal de primera instancia en ausencia de pasión, prejuicio y error manifiesto. *Blas Toledo v. Hospital Nuestra Señora de la Guadalupe*, 146 D.P.R. ___ (1998), **98 J.T.S. 101**, pág. 1427; *Mercado Rivera v. Universidad Católica de Puerto Rico*, 143 D.P.R. ___ (1997), **97 J.T.S. 106**, pág. 1274. Tampoco un tribunal apelativo debe intervenir con el ejercicio de la discreción de los tribunales apelados en ausencia de abuso de discreción, prejuicio, parcialidad por parte del tribunal apelado, o que el tribunal apelado se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención del tribunal apelativo evitaría un perjuicio sustancial. *Lluch v. España Service Sta.*, 117 D.P.R. 729, 745 (1986).

Como regla general, un tribunal apelativo no debe considerar cuestiones no alegadas ante el tribunal apelado. *Trabal Morales v. Ruiz Rodríguez*, 125 D.P.R. 340, 351 (1990); *Ex Parte Soto; Rodríguez, Int.*, 71 D.P.R. 547, 551 (1950); *Rodríguez Hnos. & Co. v. Aboy*, 66 D.P.R. 525, 545 (1946); *Flores v. Silva*, 60 D.P.R. 372, 374 (1942); *Municipio v. Comisión Servicio Público*, 53 D.P.R. 276, 286-287 (1938); *Laviena v. Ramos*, 35 D.P.R. 239, 243 (1926); *Torres v. Lothrop, Luce & Co. et al*, 16 D.P.R. 180, 182 (1910). La razón de este principio de derecho apelativo es que se causaría indebido perjuicio a una de las partes al privarla de su oportunidad de defenderse, mediante la presentación de evidencia adicional que hubiese podido presentar ante el tribunal de primera instancia, para enfrentarse a la cuestión de derecho que nunca se planteó allí.

Existen ciertas defensas privilegiadas que se renuncian si no se presentan ante el tribunal de primera instancia, como lo serían la defensa de prescripción y la defensa de incuria (laches) en un pleito de interdicto (*injunction*). *Piovanetti v. Vivaldi*, 80 D.P.R. 108, 122-123 en la nota al calce núm. 8 (1957).

Un tribunal apelativo, como cuestión discrecional, podrá considerar un asunto no planteado ante el tribunal apelado cuando el mismo sólo envuelva una cuestión de derecho. *Piovanetti v. Vivaldi, supra*, 121-123; *Coll v. Picó*, 82 D.P.R. 27, 38-39 (1960)*; Morales Mejías v. Met. Pack & Ware, Co.*, 86 D.P.R. 3, 11-12 (1962)*; Santiago Cruz v. Hernández Andino*, 91 D.P.R. 709, 711-712 (1965); *Sánchez v. Eastern Air Lines, Inc.*, 114 D.P.R. 691, 694-695 (1983).

Por último, existe otro principio de derecho que establece que, por regla general, y en ausencia de circunstancias que justifiquen lo contrario, todo litigante que escoge libremente a un abogado para que lo represente en un litigio no puede evitar las consecuencias de los actos y omisiones de tal agente y debe considerarse que ha tenido aviso de todos los hechos y actos que le han sido notificados a su abogado. Véase, *Díaz v. Tribunal Superior*, 93 D.P.R. 79, 88 (1966); *Barletta v. Tribunal Superior*, 99 D.P.R. 379, 384 (1970); *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494, 497 (1982); *Srio. del Trabajo v. J.C. Penney Co. Inc.*, 119 D.P.R. 660, 671 (1987). En otras palabras, este principio de ley establece que un cliente no puede evitar las consecuencias negativas de los actos y omisiones de su abogado, porque:

*"(1) Fue el cliente quien libremente escogió el abogado que lo representa, (2) se presume que el cliente está al tanto de la estrategia utilizada por su abogado en el caso. Por lo tanto, si nada hace para que el abogado continúe con la estrategia utilizada hasta el momento o cambia de abogado, es porque ese cliente está de acuerdo con la estrategia utilizada por el abogado en el caso."*

Nuestro Tribunal Supremo, en la opinión de *Maldonado v. Srio. de Rec. Naturales, supra*, págs. 498-499, estableció que constituye justa causa para no aplicar el principio de derecho antes mencionado, cuando en un caso hayan concurrido los siguientes hechos:

*"(1) Cuando el tribunal de primera instancia no haya impuesto sanciones al abogado o la parte que representa antes de imponer severas sanciones a la parte.*

*(2) Que el tribunal, antes de imponer la sanción severa, no haya informado a dicha parte sobre las actuaciones indebidas de su abogado durante la tramitación de su reclamación.*

*(3) Que el abogado de dicha parte haya actuado de manera indebida en la tramitación del caso, sin el conocimiento de su cliente."*

Véase además a *Echevarría Jiménez v. Sucn. Pérez Meri*, 123 D.P.R. 664, 673-674 (1989) y *Amaro González v. First Fed. Savs.*, 132 D.P.R. 1042, 1051-1053 (1993).

En el presente caso, el abogado de Wallace alega que el Tribunal de Primera Instancia abusó de su discreción al anotar la rebeldía a Wallace sin antes haberle notificado la posibilidad de tal sanción a Wallace por los actos de su abogado. Como veremos, el alegado error no se cometió.

Anteriormente en esta sentencia hemos reseñado el curso procesal del caso ante el tribunal recurrido, pero conviene resumirlo en forma esquemática del siguiente modo:

*"(1) En la minuta del 7 de febrero de 1995, se le impuso una sanción de $500.00 a Wallace por no cumplir con las órdenes relacionadas con el descubrimiento de prueba. También se le ordena que muestre causa por lo cual el Tribunal de Primera Instancia no debe anotarle la rebeldía. La Secretaría certifica al final de la minuta que notificó esta minuta enviando copia de la misma a las partes del pleito y sus abogados a sus respectivas direcciones. Apéndice de escrito de apelación, págs. 58-59.*

*(2) Conforme orden de 15 de mayo de 1995, el Tribunal de Primera Instancia acepta las excusas del abogado de Wallace y reduce la sanción de $500.00 a $200.00. Se notifica esta orden a los abogados de las partes solamente. Apéndice del escrito de apelación, pág. 69.*

*(3) En minuta de 1 de junio de 1995, se ordena a Wallace a cumplir con una orden relacionada al descubrimiento de prueba dentro de un término de 15 días. De no cumplirse con lo ordenado por el tribunal se condenaría a Wallace el pago de una sanción de $5,000.00 ($2,000.00 a favor de los demandantes y $3,000.00 a favor del ELA). Además se le apercibe que de no cumplir con las órdenes del tribunal se podría castigar al demandado eliminándole las alegaciones y anotándole la rebeldía. Secretaría certifica haber notificado copia de esta minuta a los abogados de las partes y a Wallace. Apéndice del escrito de apelación, págs. 77-77(a).*

*(4) Mediante orden de 10 de julio de 1995, se impone una sanción de $5,000.00 a Wallace por incumplir las órdenes de la minuta del 1 de junio de 1995. Se advierte a Wallace que si no consigna esa cantidad de dinero en Secretaría dentro del término de 10 días se eliminarían las alegaciones y se anotaría la rebeldía. Se ordena que se notifique a Wallace de la presente orden, pero se notifica a los abogados de las partes solamente. Es decir, no se notificó a Wallace. Apéndice del escrito de apelación, pág. 81.*

*(5) Mediante resolución de 31 de agosto de 1995, el Tribunal de Primera Instancia reconoce que la orden del 10 de junio no fue notificado a Wallace aunque ordenó a secretaría que así lo hiciera, pero menciona que el abogado de Wallace sí fue notificado de la sanción de $5,000.00 y las consecuencias de su incumplimiento. El tribunal presume que el abogado le notificó tal sanción a Wallace, debido a que era "su deber ético así hacerlo". El Tribunal de Primera Instancia ordena la eliminación de las alegaciones de Wallace y la anotación de rebeldía en su contra. Además, el tribunal condiciona el levantar la anotación de rebeldía y reinstalar las alegaciones de Wallace, sujeto a que él consigne en la secretaría del tribunal una sanción de $7,000.00 dentro de un término improrrogable de 7 días. El tribunal ordena que esta resolución le sea notificada a Wallace. Secretaría notifica por correo a los abogados de las partes en 18 de septiembre de 1995. Apéndice del escrito de*

*apelación, págs. 85-87.*

*(6) En 29 de septiembre de 1995, el abogado de Wallace consigna los $7,000.00 en la secretaría del tribunal, pero en ese mismo día secretaría le devolvió el pago de $7,000.00. La causa de la devolución fue que la consignación se hizo en un cheque personal y el reglamento del tribunal establece que las consignaciones de dinero sólo se pueden hacer en efectivo, cheques de gerente, cheques certificados, o giros. Apéndice de escrito de apelación, pág. 90.*

*(7) En 10 de octubre de 1995, el abogado de Wallace consignó los $7,000.00 en la Secretaría del tribunal por medio de un cheque certificado del Banco Popular. Apéndice del escrito de apelación, págs. 94-95.*

*(8) La minuta del 11 de octubre de 1995 refleja que el Tribunal de Primera Instancia, al examinar los autos del caso, percibió que Wallace no consignó los $7,000.00 dentro del término improrrogable de 7 días. Confirmó la eliminación de alegaciones y la anotación de rebeldía contra Wallace. El abogado de Wallace solicitó la reconsideración, y el Tribunal declara "No ha lugar" a la misma. Apéndice de escrito de apelación, pág. 96.*

*(9) Mediante "Resolución y orden" del 2 de noviembre de 1995, el Tribunal de Primera Instancia reconoció que el demandado trató de consignar la sanción de $7,000.00 en la secretaría del tribunal en 28 de septiembre de 1995, pero la consignación no fue aceptada por la Secretaría. Cuando el demandado consignó el dinero en la forma correcta, ya el término improrrogable de siete (7) días había transcurrido. El tribunal confirmó la eliminación de las alegaciones y la anotación de rebeldía del demandado y ordenó que se le devolviesen los $7,000.00 consignados por el demandado. Se notificó esta resolución y orden a los abogados de las partes solamente. Apéndice del escrito de apelación, págs. 97-99."*

Realizado el anterior estudio del recurso instado, observamos que Wallace o su abogado nunca alegaron en el Tribunal de Primera Instancia que Wallace estuviera ajeno a la conducta indebida de su abogado en el manejo y el trámite de su caso. Por el contrario, surge de los autos que el tribunal de instancia le notificó a Wallace, y éste tenía conocimiento del incumplimiento y el proceder de su abogado, rayando en abandono y obstrucción del trámite ante el tribunal de instancia. Aunque en cuanto a todos los incidentes, Wallace fue también advertido de las posibles consecuencias de tal proceder, lo cual podría culminar en la eliminación de las alegaciones y continuación del trámite procesal en rebeldía. Además, Wallace, como empresa, nunca presentó evidencia alguna que acreditase tal desconocimiento, mediante el testimonio de un representante de Wallace, o una declaración jurada, teniendo Wallace amplia oportunidad para así hacerlo.

Ante el cuadro fáctico reseñado antes, no podemos concluir que el Tribunal de Primera Instancia actuó incorrectamente al anotarle la rebeldía y eliminar las alegaciones de Wallace. Del examen del expediente apelativo se percibe que a Wallace se le notificó la sanción de $500.00 que el tribunal apelado le impuso en 7 de febrero de 1995 por no haber cumplido con sus órdenes relacionadas con el descubrimiento de prueba, sanción que luego fue reducida a $200.00. También Wallace fue notificado de la minuta del 1 de junio de 1995, en la cual se le apercibía que si no cumplía con las órdenes del tribunal relacionadas con el descubrimiento de prueba se le impondría una sanción de $5,000.00 y, posiblemente, la eliminación de sus alegaciones y la anotación de rebeldía en su contra. Además se observa que Wallace tenía conocimiento de la conducta indebida de su abogado, debido a que se trató de pagar la sanción de $7,000.00 con un cheque del caudal de Wallace, no certificado, razón por la cual Secretaría no aceptó tal pago.

Ante tales hechos es forzoso concluir que Wallace fue apercibido por el Tribunal de Primera Instancia sobre la conducta indebida de su abogado en la tramitación del caso; sin embargo, por las razones que fuera, Wallace no hizo nada para remediar tal situación. No es hasta que el Tribunal de Primera Instancia anota la rebeldía y

elimina las alegaciones de Wallace que su abogado comenzó a cooperar con el trámite del caso. Ante tal cuadro de eventos resolvemos no intervenir con la discreción del Tribunal de Primera Instancia. No se cometió el abuso de discreción alegado por Wallace.

ii. Como segundo error, se alega que el Tribunal de Primera Instancia abusó de su discreción al sancionar severamente a Wallace sin antes haber sancionado a su abogado en su carácter personal. Resolvemos que tal abuso de discreción no fue cometido. La doctrina del Tribunal Supremo de que antes de imponer una sanción severa a una parte, se debe imponer la sanción al abogado que incumple con el rigor del trámite, permite que un tribunal de primera instancia aplique la sanción o sanciones leves al cliente, al abogado en su carácter personal o a ambas personas a la vez, ello a discreción del tribunal de primera instancia. Véase *Amaro González v. First Fed. Savs.*, *supra*, págs. 1052-1053. Como ya mencionamos al discutir la anterior alegación de error, el Tribunal de Primera Instancia ordenó la sanción de $500.00 en contra de Wallace en la conferencia con antelación al juicio celebrada el día 7 de febrero de 1995, sanción que luego fue reducida a $200.00, todo ello antes de la anotación de rebeldía y eliminación de alegaciones de Wallace en 31 de agosto de 1995.

iii. Como tercer error, se alega que el Tribunal de Primera Instancia no fue equitativo en la imposición de sanciones a ambas partes. Es decir, midió las actuaciones de las partes *"con varas distintas"*. (Escrito de apelación, págs. 19-21.) De un examen del recurso apelativo fácilmente podemos observar que dicho error no fue cometido. Basta con señalar que durante el trámite del caso, los abogados de Silva y Ada se vieron obligados a presentar ocho (8) mociones solicitando la anotación de rebeldía de Wallace a causa de la conducta indebida de su abogado durante la tramitación del caso. Mientras tanto, en todo ese período Wallace nunca presentó moción alguna solicitando una sanción por la dejadez de los abogados de Silva y Ada.

iv. Como cuarto error, Wallace alega que el Tribunal de Primera Instancia erró al estimar y valorar los daños basándose en documentos no autenticados, y por imponer una indemnización excesiva con relación a los daños sufridos por los demandantes.

Resolvemos que es correcto el señalamiento en cuanto a la valoración de los daños, pero no en cuanto a la admisión de la prueba documental. Veamos porqué.

La Regla 75 de Evidencia (32 L.P.R.A. Ap. IV, R. 75.) establece que un documento no autenticado no es evidencia admisible para sostener la determinación de un tribunal. La Regla 76 de Evidencia en su inciso G (32 L.P.R.A.. Ap. IV, R. 76(G)), establece que un documento puede ser autenticado mediante la admisión de la otra parte, contra quien se va a presentar el documento, de que el documento en controversia es uno auténtico, ya sea porque la otra parte ha aceptado dicho documento como auténtico en el pasado, o porque la otra parte lo aceptó como auténtico durante el juicio. En adición, la Regla 79 de Evidencia en su inciso (B) (4) (32 L.P.R.A. Ap. IV, R. 79(B)(4)), establece que los documentos emitidos por las agencias públicas o corporaciones públicas, entre otros, no tienen que ser previamente autenticados para ser admisibles en un juicio cuando: (a) el documento está bajo un sello que aparenta ser oficial y, (b) el documento aparenta estar firmado por la persona encargada para emitir dicho documento en la agencia concernida.

De un examen de las copias de la determinación del F.S.E. de que Wallace no era un patrono asegurado al momento de ocurrir los hechos, y del examen médico efectuado por la Comisión Industrial, no podemos determinar que ambos documentos hayan sido emitidos bajo sello por las agencias. Pero de la lectura de la transcripción y minuta de la vista celebrada, en 28 de mayo de 1996, se observa que la autenticidad de ambos documentos fueron estipulados por los abogados de ambas partes en cuanto a su autenticidad. Es decir, estos documentos fueron aceptados por el abogado de Wallace como documentos auténticos. (Transcripción de la regrabación de la vista en su fondo celebrada en 15 de mayo de 1996, págs. 4 y 45-47, y Apéndice del escrito de

apelación, anejo 44, pág. 107). En conclusión, la determinación del F.S.E. de que Wallace no era un patrono asegurado y el informe médico de la Comisión Industrial, ambos documentos, fueron debidamente autenticados durante el juicio. No erró el tribunal apelado al admitir ambos documentos como parte de la evidencia en el juicio.

En cuanto a la alegación de Wallace de que el Tribunal de Primera Instancia le impuso el pago de una indemnización excesiva con relación a los daños sufridos por los demandados, entendemos que le asiste la razón.

Se dijo en *Cotto Morales v. Ríos,* 135 D.P.R. ___ (1996), **96 J.T.S. 56,** págs. 996-997:

*"La gestión judicial de estimación y valorización de los daños es una difícil y angustiosa. En esta gestión los tribunales de primera instancia están en mejor posición que el tribunal apelativo, por razón de su contacto directo con la prueba. De ahí que el tribunal apelativo sólo alterará las sumas concedidas por daños cuando sean ridículamente bajas o exageradamente altas."*

Corresponde a la parte que solicita la reducción o aumento de la indemnización concedida, demostrar las circunstancias que hacen meritorio que se modifiquen las sumas concedidas. *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, supra*, págs. 1438-1439. Por último, el Tribunal Supremo ha señalado que si bien es cierto que no existen dos casos exactamente iguales y que cada caso es distinguible según sus propias circunstancias, a los fines de determinar si la valorización de los daños en un caso específico es o no adecuada, ciertamente resulta de utilidad examinar las cuantías concedidas por el Tribunal Supremo en casos similares anteriores, sin que ello implique que dichas decisiones se deban de considerar como precedentes obligatorios. *Agosto Vázquez v. F.W. Woolworth & Co.,* 143 D.P.R. ___ (1997), **97 J.T.S. 56,** pág. 950; *Quiñones López v. Manzano Pozas,* 141 D.P.R. ___ (1996), **96 J.T.S. 95**, pág. 1315.

La Comisión Industrial de Puerto Rico, en apelación de la determinación de incapacidad otorgada por el Fondo del Seguro del Estado, determinó aumentar la incapacidad, antes de que surgiera que Wallace no era patrono asegurado. En el ejercicio de su función, la Comisión Industrial indicó: (Apéndice del escrito de apelación, anejo 46, pág. 109.)

*"En vista de lo antes expuesto, la Comisión Industrial RESUELVE:*

*Reflejar la incapacidad en este caso a la pérdida de un veinte por ciento (20%) de las funciones fisiológicas de la mano izquierda por la muñeca, debiéndose descontar el montante anteriormente pagado. RESUELVE además, fijar una desfiguración de un cuarenta y cinco por ciento (45%) de lo que permite la ley por los casos de manos (Izquierda)."*

En la opinión de *Moa v. E.L.A.,* 100 D.P.R. 573 (1972), el Tribunal Supremo concedió una suma de $10,000.00 a un adolescente, como indemnización por los daños físicos y emocionales, por habérsele tenido que amputar la falange distal del dedo índice de su mano izquierda en la escuela, a causa de la negligencia de su profesor. En su obra, El valor de los daños en la responsabilidad civil, 54 (1997), el Lcdo. Antonio J. Amadeo Murga extrapola la suma de $10,000.00 concedida por el Tribunal Supremo en 1972, a la fecha de 1995, y señala que debido a los factores inflacionarios, aquella suma de $10,000.00 tendría un valor de $40,454.00 en 1995.

En resumen, a causa de la negligencia de Wallace a Silva se le amputaron las terceras falanges de dos dedos de su mano izquierda el día 22 de agosto de 1991. No es hasta el día 12 de febrero de 1998 que el Tribunal de Primera Instancia dicta sentencia favorable a Silva. Tomando en cuenta lo concedido por el Tribunal Supremo en el caso de *Moa v. E.L.A., supra*, por la amputación de la falange de un dedo y el tiempo transcurrido entre el año

1972 y el 12 de febrero de 1998, y el aumento del costo de la vida a través de los años, resolvemos que tratándose de las falanges de dos (2) dedos en el caso de Silva, la suma de OCHENTA MIL DOLARES ($80,000.00) es una indemnización más apropiada y justa a la luz de los daños probados en el juicio. En cuanto la indemnización de $15,000.00, concedida a Ada consideramos que la misma es excesiva. En *Moa v. E.L.A.*, *supra*, pág. 591, se concedió $3,000.00 al padre por sufrimientos y angustias mentales que él sintió al ver a su hijo sufrir. En el presente caso se trata de una novia que en aquel momento vio sufrir a su novio y lo ayudó a recuperarse. Ante estas circunstancias, resolvemos que DIEZ MIL DOLARES ($10,000.00) es una indemnización apropiada y justa para Ada Palmira Oliveras.

## SENTENCIA

A base de los fundamentos que anteceden se reduce la compensación a ser pagada por Wallace International de Puerto Rico, Inc. a Castor Silva Vega, a la suma de OCHENTA MIL DOLARES ($80,000.00), y se reduce la compensación a pagarse a Ada Palmira Oliveras a la suma de DIEZ MIL DOLARES ($10,000.00). Así modificada, se confirma la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, en el caso civil IDP94-0140.

Notifíquese por la vía ordinaria.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIO 99 DTA 197

1. Salvo que se trate de una sentencia dictada en rebeldía, en un caso bajo la Ley Número 2 de octubre de 1961, el recurso a utilizarse es el *certiorari*. Sec. 4 de la Ley Núm. 2, 32 L.P.R.A. sec. 3121, *Santiago v. Palmas del Mar Properties, Inc.*, 143 D.P.R. ___ (1997), **97 J.T.S. 125** (Pág. 42).